UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**NICOLO TITOLO**, *on behalf of Rachel M. See*,             :
                                                              :
                        Plaintiff,     :
                                                              :   **MEMORANDUM DECISION AND**
           – against –                          :   **ORDER**
                                                              :
                                                              :   20-CV-3721 (AMD)
**COMMISSIONER OF SOCIAL SECURITY**,                         :
                                                              :
                       Defendant.    :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff[1] challenges the decision of the Social Security Commissioner that the

claimant was not disabled for the purpose of receiving Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act.  Before the Court are the parties' motions for judgment

on the pleadings.  (ECF Nos. 14, 18.)  For the reasons explained below, I grant in part the

plaintiff's motion, and deny the defendant's motion.

## BACKGROUND

On July 14, 2015, the claimant, Rachel M. See, applied for disability insurance benefits,

alleging disability beginning June 1, 2015, caused by bipolar condition, fibromyalgia and a back

problem.  (Tr. 64, 187-188.)  The Social Security Administration ("SSA") denied her claim after

initial review on December 17, 2015.  (Tr. 83-88.)  The claimant requested a hearing before an

ALJ on February 12, 2016.  (Tr. 90-91.)  The claimant passed away on March 4, 2017, before the

hearing could take place.  (Tr. 445.)  On July 12, 2017, ALJ Sheena Barr found that there was no

valid party to the proceeding, and dismissed the request for a hearing.  (Tr. 77.)  On July 25,

---

[1] The claimant's son, Nicolo Titolo, is an eligible substitute party, and filed this action on behalf of his
mother.

2018, the Appeals Council remanded the case for the ALJ to determine whether there was a substitute party who could proceed with the claim.  (Tr. 78-82.)  On February 13, 2019, ALJ Barr found that the claimant's children were eligible substitute parties in this case, but that the claimant was not disabled at any time from June 1, 2015, until she passed away on March 4, 2017.  (Tr. 7-27.)

ALJ Barr found that the claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2015, through her last insured date of December 31, 2020, and had the following severe impairments: bipolar disorder, fibromyalgia, and a back impairment.  (Tr. 13.)  However, she determined that the claimant's severe impairments did not meet or equal the severity of impairments listed in the applicable Social Security regulations. (*Id.*)  The ALJ concluded that the claimant had the residual functional capacity ("RFC") to perform sedentary work, except that she could only "occasionally climb, balance, stoop, kneel, crouch and crawl," she was "limited to unskilled work," and could have "occasional contact with supervisors, co-workers and the public."  (Tr. 15.)  Finally, the ALJ found that although the claimant could not perform any past relevant work as a supervisor, coordinator, or college teacher, there were jobs in the national economy including "table worker" and "press operator" that she could perform.  (Tr. 19-20.)  The Appeals Council denied the plaintiff's application for review on June 17, 2020.  (Tr. 1-6.)

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them.  42 U.S.C. § 405(g).  "[S]ubstantial evidence" is "more

than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## DISCUSSION

The plaintiff argues that the ALJ did not apply the treating physician rule, did not give appropriate weight to the claimant's subjective statements about the intensity, persistence, and limiting effects of her symptoms, and that the ALJ's RFC determination did not reflect all the claimant's limitations. In addition, the plaintiff asks the Court to remand solely for the calculation of benefits, arguing that a finding of physical and mental disability is amply supported by the treatment record, and that the ALJ failed to rely on any credible evidence to the contrary.

The defendant maintains that the ALJ properly evaluated the medical evidence and the claimant's subjective complaints, and that the case should not be remanded for calculation of benefits.

## I.   RFC Determination

### a.   The ALJ's Evaluation of the Medical Evidence

The treating physician rule requires an ALJ to give a "treating source's opinion on the issue(s) of the nature and severity" of a claimant's impairment "controlling weight" if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[2] *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2) and *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).  When an ALJ does not give a treating physician's opinion controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citations omitted).  Failure to give "good reasons" for the weight assigned to a treating physician's opinion is grounds for remand.  *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion.").

If the ALJ decides the treating doctor's opinion is not entitled to controlling weight, she must determine how much weight, if any, to give it, and must "explicitly consider" the *Burgess* factors: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129).  The ALJ must "give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion." *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2))

---

[2] The treating physician rule applies because the claimant filed her claim before March 27, 2017.  *See* 20 C.F.R. § 404.1527.

(internal quotation marks and alterations omitted); *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).

The ALJ assigned partial weight to the opinions of treating psychiatrist Lorna Avila and consultive psychologist Dana Jackson.  (Tr. 17.)  The ALJ assigned little weight to the opinions of examining psychologist Ronald Sherman and treating physician Joseph Mosak.  (Tr. 18.)  The plaintiff challenges the ALJ's determinations about Dr. Avila's and Dr. Mosak's opinions.

   *i.*  *Dr. Avila*

Although psychiatrist Lorna Avila treated the claimant beginning in 2006, the earliest note in the record is from an office visit on June 3, 2015, where the claimant discussed a January 2015 fall that caused post concussive syndrome.[3]  (Tr. 392.)  After a follow-up visit, Dr. Avila diagnosed the claimant with bipolar disorder.  (Tr. 323.)  The claimant's symptoms included a "depressed mood, tearfulness, no energy, anxiety, [and] lack of concentration."  (Tr. 323.)  Dr. Avila also noted that the claimant sometimes did not bathe because of "lack of motivation."  (Tr. 324.)  According to Dr. Avila, the claimant's "[u]nderstanding and [m]emory" was "[l]imited," as was her ability to "[s]ustain[] [c]oncentration and [p]ersistence" in social interactions, and she had a "[l]imited" ability to "[a]dapt[] . . . to changes in the work setting."  (Tr. 324-25.)  In a mental impairments questionnaire, Dr. Avila noted that the claimant had "[m]oderate" limitations in her ability to (1) "[u]nderstand and remember detailed instructions;" (2) "[c]arry out detailed instructions;" (3) "[m]aintain attention and concentration for extended periods;" (4) "[p]erform activities within a schedule and consistently be punctual;" (5) "[w]ork in coordination with or near others without being distracted by them;" (6) "[c]omplete a workday without interruptions from psychological symptoms;" (7) "[a]ccept instructions and respond

---

[3] After the fall, Dr. Germaine Rowe diagnosed the claimant with lumbar pain, post concussive syndrome, depression and anxiety.  (Tr. 345.)

appropriately to criticism from supervisors;" (8) "[g]et along with coworkers or peers without distracting them;" and (9) "[s]et realistic goals."  (Tr. 384.)  In Dr. Avila's view, the claimant was "limited in all domains of work related mental functioning," and would miss work two to three times a month because of her impairments.  (Tr. 17, 384, 386.)  In an opinion dated January 2016, Dr. Avila wrote that the claimant "had a recurrence of her symptoms for the past year in that her mood has been depressed with dysphoric affect, she has psychomotor retardation and has difficulty focusing and has poor concentration."  (Tr. 368.)

ALJ Barr assigned only partial weight to Dr. Avila's 2015 opinion because it was "non-descriptive, and does not provide a clear understanding of the claimant['s] functional capacity." (Tr. 17.)  She also assigned only partial weight to Dr. Avila's May 2016 opinion because "the record does not support moderate findings in all areas."  (*Id.*)  She found that Dr. Avila's conclusions that the claimant was "generally, capable of tending to her own grooming and hygiene, . . . had good insight and judgment . . . [and was] able to manage her own finances" were inconsistent with the doctor's conclusion that "the claimant demonstrate[d] moderate limitations in adaptation due to an impairment in setting realistic goals."  (*Id.*)  The ALJ assigned little weight to Dr. Avila's January 2016 opinion, because it was "unsupported by Dr. Avila's mental impairment questionnaire of the claimant where she indicated that the claimant did not exhibit more than moderate limitations in all domains of work related mental functioning."  (Tr. 18.)

In assigning Dr. Avila's opinions less than controlling weight, the ALJ did not consider all the *Burgess* factors.  Although the ALJ noted some divergence between Dr. Avila's opinion and the medical evidence in the record, she did not consider the frequency and nature of Dr.

Avila's treatment, the extent to which medical evidence supported her opinion, or that Dr. Avila
is a specialist.

The treating physician's opinion is especially important in cases of mental illness,
because the treating physician is able to give "a more complete picture than a 'one-time snapshot
of a claimant's status [which] may not be indicative of [her] longitudinal mental health.'"
*Marrero v. Comm'r of Soc. Sec.*, No. 19-CV-01369, 2020 WL 3868709, at *3 (E.D.N.Y. July 9,
2020) (quoting *Estrella*, 925 F.3d at 98).  "Mental health patients have good days and bad days;
they may respond to different stressors that are not always active."  *Pagan v. Saul*, No. 18-CV-
7012, 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (internal quotation marks omitted).

Indeed, the ALJ gave the same weight to the opinion of a consultative examiner,
psychologist Dana Jackson, who examined the claimant only once.  According to the plaintiff,
the Administration did not provide Dr. Jackson with the claimant's prior psychiatric treatment
records.  (ECF No. 15 at 10.)  Based on the single examination, Dr. Jackson opined that the
claimant had "the ability to follow and understand simple instructions and directions; . . .
perform simple tasks; . . . maintain her concentration and attention at a marginal-to-fair level
depending on what the environmental stimulus is; . . . maintain a regular schedule; . . . learn and
perform complex tasks independently; . . . [and] relate to others in a social situation."  (Tr. 361.)
The ALJ assigned partial weight to this opinion based on its consistency with the record.  (Tr.
17.)  But Dr. Jackson's conclusion that the claimant could maintain a regular schedule and could
learn and perform complex tasks independently conflicted with the conclusions of treating
physicians Dr. Avila and Dr. Mosak, and with Dr. Sherman's opinion.  (Tr. 381-86, 403-04, 411-
14); *see also Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) (The ALJ's decision to
"elevat[e] the opinion of the medical adviser, who had never examined [the claimant], over that

of . . . her treating physician" was improper).  "[T]he longitudinal relationship between a mental health patient and her treating doctor provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination."  *Pagan*, 2020 WL 2793023, at *6 (quoting *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015)).

Dr. Avila, a specialist, treated the claimant for at least ten years, beginning in 2006.[4] (Tr. 323.)  In her reports, Dr. Avila noted multiple symptoms of mental impairments, including "depressed moods, tearfulness, no energy, anxiety and lack of concentration."  (Tr. 323.) Moreover, to the extent the ALJ afforded Dr. Avila's opinions less weight because of inconsistencies between her opinions and the rest of the claimant's record, or because there were insufficient explanations for Dr. Avila's conclusions, the ALJ should have sought clarification from Dr. Avila, or additional records from her years of treating the claimant.  *See McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("[S]ince the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions."); *Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017) ("The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight." (citation omitted)).

---

[4] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."  20 C.F.R. § 404.1527(c)(2)(i).

On remand, the ALJ should determine the extent to which the record should be supplemented, and address all the *Burgess* factors after obtaining the necessary information.  The ALJ should then determine the appropriate weight to assign to Dr. Avila's opinions.[5]

> ii.  *Dr. Mosak*

Rheumatologist Joseph Mosak first treated the claimant on December 30, 2015.  (Tr. 369.)  After a physical examination, he documented tender points in 18 out of 18 locations, pain with motion in the right ankle and knee, left ankle tenderness, and left knee pain with flexion. (Tr. 371.)  He diagnosed the claimant with fibromyalgia, and estimated that on average she would miss work more than three times a month due to her impairments or treatment.  (Tr. 372, 414.)

Nevertheless, the ALJ assigned Dr. Mosak's medical opinion little weight because it "d[id] not provide a function-by-function analysis of the claimant's abilities based on her impairments," made "a conclusory determination regarding the claimant's ability to work," and because his "treatment of the claimant was generally conservative, consisting of medication and recommendations for exercise and stretching."  (Tr. 18.)

In assigning Dr. Mosak's opinion less than controlling weight, the ALJ did not consider all the relevant *Burgess* factors, including the frequency, length, nature, and extent of treatment, whether medical evidence supported the opinion, the consistency of the opinion with the remaining medical evidence, and whether Dr. Mosak is a specialist.  Like Dr. Avila, Dr. Mosak

---

[5] Psychologist Ronald Sherman evaluated the plaintiff on October 16, 2016.  (Tr. 407.)  He diagnosed the plaintiff with "Bipolar, depressed type," "Panic Disorder with Agoraphobia" and "Alcohol abuse in remission for more than 20 years"—conditions she had since June 2015.  (Tr. 409.)  Dr. Sherman opined that the plaintiff was "totally disabled emotionally and unable to function in any job in any capacity." (*Id.*)  The ALJ assigned Dr. Sherman's opinion little weight because he examined the plaintiff only once, his examination results did not support his opinion, and his findings were inconsistent with Dr. Avila's.  (Tr. 18.)

is a specialist; he is a board-certified internist with a specialty in rheumatology.  (ECF No. 15 at 5.)  He concluded that the claimant met the American College of Rheumatology criteria for fibromyalgia and based his opinions about the claimant's limitations on physical examinations, as well as evidence of 18 out of 18 positive tender points and widespread pain in all quadrants of the body including her lower and upper back, arms, legs and hips.  (Tr. 411-12.)

Moreover, while the ALJ found that Dr. Mosak made legal conclusions with little support for his opinion about the claimant's condition, nothing in the record shows that she sought additional information from Dr. Mosak.  "If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician."  *Calzada v. Astrue*, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *see also Shaw*, 221 F.3d at 134 ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of [her] treating physician, violates h[er] duty to develop the factual record.").

Accordingly, on remand, the ALJ should seek whatever additional information she needs from Dr. Mosak, and address the *Burgess* factors in determining the appropriate weight to assign his opinion.

### b.     The Plaintiff's Subjective Statements

The plaintiff argues that the ALJ's evaluation of the claimant's subjective statements about her physical and mental impairments is not supported by substantial evidence.  As explained above, the ALJ did not have the opportunity to evaluate the claimant in person, because the claimant died before the hearing.  Accordingly, the ALJ had to rely on the claimant's statements in a functional report from September 2015.

"Administrative law judges (who usually have the only opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying) obviously are best-positioned" to evaluate the plaintiff's subjective statements. *Whiting v. Astrue*, No. 12-CV-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *report and recommendation adopted*, No. 12-CV-274, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013) (citations omitted); *see also Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982) ("It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *see also Snell v. Apfel,* 177 F.3d 128, 135 (2d Cir. 1999) (holding that the ALJ is in the best position to assess the claimant's credibility). While an ALJ must take a claimant's reports of pain and other limitations into account, she is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ first must determine that there is a "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 404.1529(b). If the ALJ concludes that a claimant has an underlying impairment, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c). If the "allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citations omitted); *see also* 20 C.F.R. § 404.1529(c)(4).

In evaluating the plaintiff's subjective statements, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to

alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant has

received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7)

other factors concerning the claimant's functional limitations and restrictions as a result of pain

or other symptoms.  20 C.F.R. § 404.1529(c)(3); *see also Gallagher*, 243 F. Supp. 3d at 306.  An

ALJ need not review each factor in her opinion.  *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d

Cir. 2013) (upholding an ALJ's determination even though it "did not include an explicit

function-by-function analysis of all possible limitations but did address all relevant

limitations.").

The ALJ found that "the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms," but concluded that the claimant's

"statements concerning the intensity, persistence and limiting effects of these symptoms [were]

not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 15-16.)

The ALJ made these conclusions based on the claimant's descriptions of her daily activities—

which included swimming—her travel history, MRIs, and physical examinations that showed

that she had full range of motion, no joint swelling and no deformities.  (Tr. 16.)

Evidence that the claimant "gamely chooses to endure pain in order to pursue important

goals, such as attending church and . . . shopping for [her] family" is not evidence that she "is

capable of working." *Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998) (internal quotation

marks and citation omitted).  "[A] finding that a claimant is capable of undertaking basic

activities of daily life cannot stand in for a determination of whether that person is capable of

maintaining employment, at least where there is no evidence that the claimant 'engaged in any of

these activities for sustained periods comparable to those required to hold a sedentary

job.'" *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004) (quoting *Carroll*, 705 F.32d at 643).

The ALJ's evaluation of the claimant's subjective statements is not supported by substantial evidence, especially since the ALJ never had the opportunity to assess the claimant in person. An ALJ should not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors [she] must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." S.S.R. 16-3P, 2016 WL 1119029, at *5. The ALJ relied on medical evidence that the claimant's symptoms improved (Tr. 16), but did not consider that the claimant's daily life was limited. For example, while she could pick her son up from school, she indicated that others helped look after her children, and that she could not exercise every day, get out of bed easily, or shower regularly. (Tr. 228.) She said that she had difficulty getting out of the house because of her severe depression and fibromyalgia. (Tr. 230.) On remand, the ALJ should consider the claimant's subjective statements, taking into account all of the medical evidence in the record.

**II.    Remand**

The plaintiff urges the Court to remand this action only for the calculation of benefits. (ECF No. 15 at 27.) According to the plaintiff, the record makes clear that the claimant was disabled within the meaning of the Social Security Act. (*Id.*)

Reversal and remand solely for the calculation of benefits is appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *accord Rosa v.*

*Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).  On the other hand, "[r]emand for further proceedings is appropriate in cases in which the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the application and regulations."  *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).  The record before this Court does not provide persuasive proof of disability, and further proceedings are necessary so that the ALJ can reevaluate the medical opinions, in particular the opinions of the claimant's treating physicians and the claimant's subjective statements.

## CONCLUSION

For these reasons, this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
        December 8, 2021